IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELENNA KIM-FORAKER,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | : : : : : : : : : : | CIVIL ACTION<br><br><br>No. 09-3786 |

Norma L. Shapiro, J.

July 14, 2011

## MEMORANDUM

Plaintiff Elenna Kim-Foraker ("Kim-Foraker") brings claims against her former employer, defendant Allstate Insurance Company ("Allstate"), for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955 *et seq.* The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Before the court is Allstate's motion for summary judgment. The court will grant Allstate's motion.

## I.    Background

Kim-Foraker, a Korean-American, began working as a trial attorney at Allstate's Philadelphia legal office in May, 1999. In 2004, she was promoted to the position of senior trial attorney, responsible for training less experienced trial lawyers.

Kim-Foraker was the only Asian-American attorney working in Allstate's Philadelphia legal office from May, 1999 until her termination in September, 2006. Richard Steiger ("Steiger"), a Caucasian man, was her immediate supervisor. She also briefly reported to Walter

Robinson ("Robinson"), an African-American man.  Kim-Foraker and her immediate supervisors each reported to Twanda Turner-Hawkins ("Turner-Hawkins"), an African-American woman, who was the head of Allstate's Philadelphia legal office.

In early 2006, Allstate alleges that Kim-Foraker began to engage in disruptive and unprofessional behavior in the workplace, in violation of Allstate's policy requiring each employee to treat all other employees with dignity and respect, conduct oneself in a professional manner, and create a supportive rather than a negative working environment.  Def.'s Mot. for Summ. J., Ex. D (Unacceptable Behavior Notification).  Allstate's policy, entitled "The Allstate Partnership," states that employees are expected to "[f]oster dignity and respect in all interactions.  Treating each other with dignity and respect, regardless of job level or relationship, is the standard at Allstate.  Nothing less is acceptable."  Id.

On February 15, 2006, a representative from Allstate's Central Processing Unit ("CPU") held a meeting with all Allstate attorneys in the Philadelphia office to discuss how the CPU could better serve the office's administrative needs.  Id.  Allstate alleges that during the meeting, Kim-Foraker asked several questions of the CPU representative in a confrontational and argumentative manner.  Id.  Kim-Foraker admits that her supervisor, Steiger, believed she acted unprofessionally (he communicated this to her in a subsequent meeting), but she disputes Allstate's characterization of her behavior and states she did not act in a confrontational manner or raise her voice.  Id., Ex. A (Dep. of Kim-Foraker) at 111:1-113:1.

On March 1, 2006, Kim-Foraker met with Allstate attorney manager Robinson in his office.  She informed Robinson that certain judges were criticizing and threatening sanctions against Allstate's Philadelphia office because of its failure to meet deadlines and comply with

court orders. *Id.* at 127:1-130:17. She was upset about the criticism because she felt it harmed her reputation, and she requested that Robinson, as a manager, take action to correct the situation. *Id.* She also complained that other employees in the Philadelphia office failed to inform her of phone messages, so that she missed deadlines. *Id.* at 120:4-122:24.

The conversation became heated. Allstate alleges that several co-workers with nearby offices heard Kim-Foraker screaming at Robinson for approximately fifteen minutes. *Id.*, Ex. B (human resources investigation) at 2-3. Alarmed, the co-workers summoned Steiger to intervene on Robinson's behalf. *Id.* Steiger entered Robinson's office. *Id.* Steiger reports that Robinson asked Kim-Foraker to leave, but she refused, and Robinson left instead. *Id.* at 1-2. According to Kim-Foraker, she did not yell but instead remained calm. *Id.*, Ex. A (Dep. of Kim-Foraker) at 127:1-130:17. Kim-Foraker alleges that as Robinson left his office, he stepped on her right foot, hit her left shoulder with his body, and then slammed his body against her and knocked her backwards. *Id.* at 136:15-138:14. Robinson states he cannot remember what happened, but acknowledges that Steiger told him he accidentally bumped into Kim-Foraker. *Id.*, Ex. B (human resources investigation) at 3. Steiger states that Robinson may have bumped Kim-Foraker on his way out, but states it was accidental and only a "minor graze." *Id.* at 2.

Kim-Foraker filed a human resources complaint against Robinson for the March 1, 2006 incident. *Id.* at 1. Allstate's human resources manager conducted an investigation, from March 1 to 3, 2006, during which she interviewed Allstate employees who had witnessed or overheard the March 1, 2006 incident. *Id.* at 1-4. The human resources investigator concluded that Robinson did not violate any Allstate policy; she found that he did not intentionally bump into Kim-Foraker, and that he raised his voice only at the end of the meeting when he asked Kim-Foraker

3

to leave his office. *Id.* at 3-4. In contrast, the investigation found that Kim-Foraker acted

unprofessionally by engaging in argumentative behavior. *Id.*

The human resources investigator also concurred with recommendations from Steiger and

Turner-Hawkins that Kim-Foraker be issued a written warning for unacceptable behavior. *Id.* at

4. On March 3, 2006, Steiger presented Kim-Foraker with an Unacceptable Behavior

Notification. The notification cited February 15 and March 1, 2006 as incidents of inappropriate

behavior inconsistent with Allstate's policy of treating all employees with dignity and respect,

and stated that further instances of inappropriate behavior would result in a Job in Jeopardy

Notification. *Id.*, Ex. D (Unacceptable Behavior Notification).[1] After receiving the

---

[1] The Unacceptable Behavior Notice states in pertinent part:

There have been two recent incidents of inappropriate behavior on your part. On February 15, 2006, during our office meeting with Christine Tennon, Central Processing Unit Director, you spoke to her in a confrontational and unprofessional manner in front of your co-workers.

On March 1, 2006, you went to Lead Counsel, Walter Robinson's office to discuss issues with him. During that meeting you raised your voice to the point of yelling at him. Your yelling was heard by several of your co-workers and characterized as "screaming" at Walter. This caused a distraction to all employees who were in the area of his office. I was called to Walter's office to investigate the disturbance and also witnessed your behavior.

Elenna, your behavior in the office, as described, is inconsistent with Allstate's commitment to treat employees and customers with dignity and respect. That behavior adversely reflects upon Allstate and creates a negative work environment for Allstate employees. It does not meet the Allstate Partnership expectation of a supportive work environment or one of dignity and respect.

Unprofessional behavior will not be tolerated in the workplace. You are expected, without fail, to conduct yourself in an appropriate and professional manner. You are expected to not behave in any way that reflects negatively upon Allstate or creates a negative work environment for Allstate employees.

Your failure to treat others with dignity and respect is in direct violation of the Allstate Partnership as it relates to Dignity and Respect. Your actions have created a hostile work environment and cannot be tolerated.

. . .

Unacceptable Behavior Notification, Kim-Foraker took an approved medical leave until May 15, 2006, when she had exhausted her paid days off and returned to work on a reduced schedule.[2] *Id.*, Ex. A (Dep. of Kim-Foraker) at 160:3-18.

Upon her return to work in May, 2006, Allstate alleges that Kim-Foraker's unprofessional behavior continued. For example, Allstate states (and Kim-Foraker does not dispute) that, unprompted, she discussed with insurance adjusters the March 1, 2006 incident, including her allegations that Robinson physically injured her; this discussion made the insurance adjusters feel uncomfortable, and distracted the adjusters' attention from attending to customer issues. *Id.*, Ex. F (Job in Jeopardy Notification). On May 26, 2006, Allstate issued a Job in Jeopardy Notification to Kim-Foraker. *Id.* The notification stated that Kim-Foraker continued to engage in unprofessional behavior in violation of Allstate's policy, and cited specific examples of her unprofessional behavior. *Id.* The notification also cited Allstate's policy requiring professional behavior in the workplace, and stated that failure to improve her behavior and comply with the

---

Further instances of inappropriate behavior on your part, will result in a Job in Jeopardy Notification.
Def.'s Mot. for Summ. J., Ex. D (Unacceptable Behavior Notification).

[2] Kim-Foraker states she could not work following the March 1, 2006 incident because of injuries sustained to her left foot, neck, and left shoulder during the incident. Def.'s Mot. for Summ. J., Ex. A (Dep. of Kim-Foraker) at 163:13-21, Ex. C (Workers' Compensation decision). Kim-Foraker sought workers' compensation, but her claim was denied because the Workers' Compensation Judge found no evidence that her injuries were caused by the March 1, 2006 incident. *Id.*, Ex. C (Workers' Compensation decision). The Judge concluded that Kim-Foraker's testimony about the March 1, 2006 incident was not credible. *Id.* ¶ 9. The Judge gave no weight to three physician reports, submitted by Kim-Foraker, that she could not work as a result of her injuries because each physician report accepted as true Kim-Foraker's account of the events on March 1, 2006, rather than examining for themselves the cause of Kim-Foraker's injuries. *Id.*

policy, or make reasonable effort to do so, could result in her immediate termination. *Id.*[3]

On August 30, 2006, Kim-Foraker met with the human resources manager and supervisors Turner-Hawkins and Steiger to discuss her medical condition. They asked Kim-Foraker to complete Family and Medical Leave Act ("FMLA") paperwork to continue working on a reduced schedule. *Id.*, Ex. A (Dep. of Kim-Foraker) at 190:16-193:14, Ex. G (August 30, 2006 human resources memorandum). According to Turner-Hawkins and the human resources manager, Kim-Foraker began yelling that she would not complete FMLA forms because she had a workers' compensation claim pending, and she believed completing the FMLA forms would foreclose her eligibility for workers' compensation. *Id.*, Ex. G (August 30, 2006 human

---

[3] The Job in Jeopardy Notification states in pertinent part:
There have been three recent incidents reported to leadership regarding Elenna's behavior.

On May 16, 2006, Elenna engaged in inappropriate and unprofessional behavior. Specifically, she called a Willow Grove MCO Staff Adjuster for the purpose of discussing a claim file. . . . Instead, she went into a lengthy detailed discussion with the employee about a personal matter. . . . [I]t was disruptive and created a negative work environment for the employee.

On May 16, 2006 the employee[,] who was uncomfortable with Elenna's actions . . . contacted the manager . . .

On May 17, 2006, Elenna spoke to a Philadelphia West MCO Claim Rep for the purpose of discussing a claim file. Elenna turned the conversation into a lengthy discussion about a personal matter. Based on the content of the conversation . . . the Rep requested that Elenna be removed from working the case.
. . .

Elenna's actions were inconsistent with Allstate's commitment to treat employees and customers with dignity and respect. This behavior adversely reflects upon Allstate and creates a negative work environment for Allstate employees. It does not meet the Allstate Partnership expectation of a supportive work environment or one of dignity and respect.
. . .

Any conduct which causes management to lose confidence in your ability to perform your job or which adversely reflects upon Allstate or its employees could lead to further performance management actions including and up to termination of your employment. Def.'s Mot. for Summ. J., Ex. F (Job in Jeopardy Notification).

resources memorandum).  The human resources manager explained that the FMLA forms would not affect her workers' compensation claim, and that completion of the forms was necessary to continue her reduced work schedule, but Kim-Foraker cut off the explanation and continued to yell; co-workers overheard the yelling.  *Id.*  According to Kim-Foraker, she refused to complete the FMLA forms, but she did not yell.  *Id.*, Ex. A (Dep. of Kim-Foraker) at 190:16-193:14.

Following the August 30, 2006 encounter, Turner-Hawkins suspended Kim-Foraker without pay until further notice for unprofessional behavior, and submitted a recommendation for termination of Kim-Foraker's employment to the human resources manager.  *Id.*, Ex. H (August 30, 2006 termination recommendation).  Turner-Hawkin's recommendation cites specific instances of Kim-Foraker's unprofessional behavior, including the March 1, 2006 and August 30, 2006 incidents, and notes that Ms. Kim-Foraker was warned that continued unprofessional behavior would lead to her termination.  *Id.*  The human resources manager forwarded the recommendation to the human resources senior manager, who concurred and submitted her own recommendation for Kim-Foraker's termination to the Allstate Vice President of Litigation Services and Allstate Claims Director for Litigation Services.  *Id.*, Ex. G (August 30, 2006 human resources memorandum), Ex. I (termination request).  Kim-Foraker's termination was approved on September 5, 2006 by the Vice President of Litigation Services and Claims Director for Litigation Services.  *Id.*, Ex. I (termination request).  On September 6, 2006, Turner-Hawkins informed Kim-Foraker that her employment was terminated.  Pl.'s Pretrial Memo. at 4.  Since her termination from Allstate, Kim-Foraker has sought new employment but has been unable to find employment in a state in which she is a member of the bar.  *Id.*, Ex. A (Dep. of Kim-Foraker) at 260:18-262:14.

Kim-Foraker alleges Allstate terminated her employment because of her race and national origin. She states that although she behaved similarly to other attorneys in Allstate's Philadelphia legal office, the other attorneys, who were not Asian-American, were not disciplined. Pl.'s Third Supp. Pretrial Memo. at 2, 5; Def.'s Mot. for Summ. J., Ex. A (Dep. of Kim-Foraker) at 227:7-229:11. She also identifies discriminatory remarks uttered by her supervisor, Turner-Haskins, including:

- After the February 15, 2006 CPU meeting: "[W]e had a meeting, this was in front of everybody, all the lawyers as well as the staff, where Twanda looked at me straight in the face and said that she was taking kung fu, and that was very derogatory, sir." Def.'s Mot. for Summ. J., Ex. A (Dep. of Kim-Foraker) at 213:15-214:5.

- At some date between February 15 and March 1, 2006: "Mrs. Twanda Turner-Hawkins told Mr. Steiger that I was on the take, that I dress too well and that Koreans always use cash and for the place I'm working for I was just looking too good. *Id.* at 207:4-7.

- At some date between February 15 and March 1, 2006: "[S]he basically told me that you Koreans, you work hard, you're a model minority, so therefore I expect you to produce more than the other lawyers in this office, but if you rat on the white guys and also the old dudes, she didn't say dudes, the old lawyers, you know who I am talking about, she said . . . then I'll help you out and you won't get as much." *Id.* at 215:2-8, 217:10-12.

She admits that none of these remarks were made during the March 1, 2006 confrontation with attorney manager Robinson, the August 30, 2006 meeting at which she was suspended, nor the September 6, 2006 meeting at which she was terminated. *Id.* at 230:5-20.

After exhausting her administrative remedies, Kim-Foraker filed a two-count complaint in federal court. Count I alleges hostile work environment and individual disparate treatment violations of Title VII; Kim-Foraker alleges she was disciplined more severely and ultimately terminated because of her race and national origin. Count II alleges violation of the PHRA for

individual disparate treatment.  Kim-Foraker requests back pay,[4] reinstatement with seniority,

compensatory and punitive damages, and reasonable attorney's fees and costs.

Following a failed settlement discussion and court-permitted withdrawal of her attorney,

Kim-Foraker has proceeded *pro se*.[5]  The court is patient with *pro se* litigants, but plaintiff, an

attorney, has pursued her claim in a dilatory manner.[6]

Kim-Foraker did not discuss the Title VII hostile work environment claim in any of her

---

[4] Kim-Foraker seeks back pay from the date of her termination at Allstate, September 6, 2006, to the present.  Kim-Foraker's representation that she was eligible and willing to work from September 6, 2006 to the present, so that she is entitled to back pay for this period of time, is inconsistent with representations she made to a Delaware state court in a personal injury action.

Prior to filing her federal employment discrimination action, Kim-Foraker commenced a personal injury action in Delaware state court to recover for injuries allegedly sustained in a car accident on May 25, 2007.  Def.'s Dec. 22, 2010 Letter to the Court (paper no. 39), Ex. A (Delaware complaint).  In the Delaware state court action, Kim-Foraker alleges that the May 25, 2007 car accident re-aggravated injuries she allegedly sustained during the March 1, 2006 incident with Allstate supervisor Robinson.  Final Pretrial Conf. Tr. (paper no. 40) at 26:13-24.  Kim-Foraker proffered expert medical testimony in the Delaware state court action stating that, as a result of the car accident, she was disabled and unable to work from September, 2007 to March, 2010.  Def.'s Dec. 22, 2010 Letter to the Court (paper no. 39), Ex. E (Dr. Fink letter).

Kim-Foraker's representations that she is entitled to back pay from September 6, 2006 to the present, and her representations in Delaware state court that she was unable to work from September, 2007 to March, 2010, are clearly inconsistent.  Kim-Foraker is not entitled to back pay for the period of time she was unable to work.  The court, troubled by plaintiff's inconsistent representations, considered applying the doctrine of judicial estoppel.  However, because the Delaware state court action was dismissed with prejudice, the Delaware state court never accepted or adopted Kim-Foraker's representation that she was disabled and unable to work, so the bad faith element of judicial estoppel is not satisfied.  *See Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001) (entry of summary judgment against plaintiff on judicial estoppel grounds constituted an abuse of discretion because the earlier court had not adopted or accepted plaintiff's initial claim, on which plaintiff later changed position, so the bad faith criterion of judicial estoppel was not satisfied).

[5] Louis Bell filed an entry of appearance on behalf of Kim-Foraker on May 24, 2011, while the court held Allstate's summary judgment motion under advisement.  Mr. Bell has submitted no new filings for the court's consideration.

[6] Kim-Foraker has failed to appear and timely file papers on several occasions.  She failed to attend a pretrial conference scheduled for June 8, 2010; the conference had to be rescheduled.  She submitted her final pretrial memorandum three weeks late, and the memorandum did not comply with the court's pretrial order and the requirements of Local Rule 16.1(c); plaintiff's three supplemental pretrial memoranda did not correct the deficiencies.  Finally, in her response to Allstate's summary judgment motion, she failed to cite a single case in support of denial of summary judgment.

four pretrial memoranda, nor at the final pretrial conference; we deem the claim abandoned.[7]

Regarding her individual disparate treatment claims, Kim-Foraker clarified at the final pretrial conference:

> I think they had multiple reasons why they fired me. One of the reasons is because I was Korean and Asian, under Title VII. The other reason was because I was a whistleblower and I told them about all the illegal activities that was [sic] going on when I was on paid medical leave for my husband's heart failure. The third reason is because, according to Ms. [T]wanda Turner-Hawkins, I should be treated differently because I was Korean and that I was doing illegal activity – it was – with the other lawyers, and these kinds of allegations were put against me and I never, ever did anything like that.

Tr. 12/15/10 64:12-22. Allstate moves for summary judgment for failure of proof on the Title VII and PHRA individual disparate treatment claims.

## II.     Legal Standard

Summary judgment must be granted if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The movant must identify those portions of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant does not bear the burden of persuasion at trial, it may show that the nonmovant's evidence is insufficient to carry the burden of persuasion at trial. *Id.* at 323. The nonmovant must then respond with evidence establishing a genuine issue of material fact for trial. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[7] Even if the claim were not abandoned, it is unlikely that Kim-Foraker would be able to show that she suffered from severe and pervasive discrimination on this record: a handful of discriminatory remarks uttered by supervisors at times other than Allstate's adverse employment actions. Severe and pervasive discrimination is a required element of a hostile work environment claim under Title VII. *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007).

574, 586-87 (1986). A dispute is "genuine" only if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant may not rely upon mere allegations, general denials, or vague statements. *Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 889, 890 (3d Cir. 1992).

## III.   Discussion

Kim-Foraker brings claims for individual disparate treatment under Title VII and the PHRA. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PHRA makes it unlawful "[f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . to discharge from employment . . . or to otherwise discriminate against such individual." 43 Pa. Cons. Stat. Ann. § 955. The same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

Individual disparate treatment cases generally occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-986 (1988). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000). Kim-Foraker may sustain her individual disparate treatment claims by presenting:

11

(a) direct evidence of discrimination; (b) circumstantial evidence of discrimination under the pretext framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (c) direct or circumstantial evidence under the mixed motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Kim-Foraker did not present direct evidence of discrimination. Kim-Foraker discussed, at the final pretrial conference, her supervisor's discriminatory remarks regarding her race and national origin, but she failed to present evidence, either by her signed affidavit, deposition testimony, or any other evidence of record, with her response to Allstate's motion for summary judgment. However, Allstate attached to its summary judgment motion certain portions of Kim-Foraker's deposition where she testified to her supervisor's remarks as evidence of intentional discrimination. Her supervisor, Turner-Hawkins, stated: that the supervisor was taking kung fu; that Koreans always use cash; and that Koreans always work hard, so expectations for Kim-Foraker were greater than those for other employees. Def.'s Mot. for Summ. J., Ex. A (Dep. of Kim-Foraker) at 213:15-214:5, 207:4-7, 215:2-8, 217:10-12. A district court has discretion over adjudication of a summary judgment motion when a party fails to support an assertion of fact properly. Fed. R. Civ. P. 56(e). Even exercising discretion and considering her supervisor's remarks, evidence of which Kim-Foraker herself failed to present to the court, the remarks do not amount to direct evidence of discrimination. Although the remarks were uttered by one of Kim-Foraker's supervisors, none of the remarks were uttered when Allstate took disciplinary action against Kim-Foraker or made the decision to terminate her employment. The supervisor's remarks are "stray remarks," unrelated to the decision to terminate her employment; stray remarks are not direct evidence of discrimination. *See Price Waterhouse*, 490 U.S. at 477

(O'Connor, J.) (concurring) ("Nor can statements by nondecisionmakers, or statements by decisionmakers, unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden . . . . What is required is . . . direct evidence that decisionmakers place substantial negative reliance on an illegitimate criterion in making their decision."); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

Kim-Foraker may also prove her individual disparate treatment claims with circumstantial evidence under the three-step burden-shifting procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 804)).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. We assume, for this summary judgment motion, that Kim-Foraker established a prima facie case. The prima facie case gave rise to a presumption of discrimination; Allstate could rebut the presumption by producing evidence that it had a legitimate, non-discriminatory reason for terminating Kim-Foraker's employment. *Id.* at 253-55. Allstate stated it terminated Kim-Foraker because she acted unprofessionally, in violation of

Allstate policy.  Allstate supported its proffered legitimate non-discriminatory reason with record evidence.  Allstate produced written warnings citing Allstate's employment policy, "The Allstate Parntership," and Kim-Foraker's violations of it.  Def.'s Mot. for Summ. J., Ex. D (Unacceptable Behavior Notification), Ex. F (Job in Jeopardy Notification).  Allstate also produced results of a human resources investigation conducted after the March 1, 2006 incident between Kim-Foraker and attorney manager Robinson; the investigation included interviews with Allstate employees who stated that Kim-Foraker behaved unprofessionally during the March 1, 2006 incident.  *Id.*, Ex. B (human resources investigation).  Finally, Allstate produced written documents, prepared by the office supervisor, the human resources manager, and the human resources senior manager, detailing Kim-Foraker's unprofessional behavior and recommending her termination.  *Id.*, Ex. G (August 30, 2006 human resources memorandum), Ex. H (August 30, 2006 termination recommendation), Ex. I (termination request).  The recommendation submitted by the human resources senior manager was approved by Allstate's Vice President of Litigation Services and Allstate's Claims Director for Litigation Services.  *Id.*, Ex. I (termination request).  Allstate satisfied its burden of production with evidence of a legitimate non-discriminatory reason for Kim-Foraker's termination.

The burden then shifted to Kim-Foraker to produce evidence creating a triable issue of material fact that Allstate's proffered reason for her termination was a pretext for racial and national origin discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993); *Fuentes v. Perkasie*, 32 F.3d 759, 763 (3d Cir. 1994).  To show pretext and survive summary judgment, Kim-Foraker must submit evidence, direct or circumstantial, that: (1) casts doubt upon the legitimate reason proffered by Allstate, so a fact-finder could reasonably conclude that the

reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of her termination. *Fuentes*, 32 F.3d at 764.

Kim-Foraker stated in her deposition that other non-Asian attorneys at Allstate behaved unprofessionally, but were not disciplined:

> A.   Mr. Simpson would – he cussed a lot, he didn't review the cases, things like that, in front of the other male attorneys and he was never sanctioned.
>
> Q.   Okay, so with respect to Mr. Sampson what you're saying is that you believe he was treated better than you were treated?
> A.   Absolutely, sir.
>        . . .
>        He cussed all the time.
> Q.   He used foul language?
> A.   Yes, sir.
> Q.   Okay. What else?
> A.   He made derogatory statements about Allstate.
>        . . .
> Q.   I believe from your Complaint you also identified TS as someone you believe was treated better than you were.
> A.   Yes, sir.
> Q.   What did Ms. S do for which you believed she should be sanctioned?
> A.   She used very foul language, MF. I don't want to say it.
>        . . .
> Q.   Okay. What else?
> A.   She fell asleep in front of Judge Bernstein, Judge Bernard Bernstein.
> Q.   What else?
> A.   That's all. She was never sanctioned for that.
> Q.   You were not her supervisor; correct?
> A.   No, but Richard Steiger told me.

Def.'s Mot. for Summ. J., Ex. A (Dep. of Kim-Foraker) at 227:7-229:16. Her deposition testimony, standing alone, is insufficient evidence to cast doubt on Allstate's legitimate non-discriminatory reason and create a triable issue of whether Allstate's proffered reason is pretext.

First, the other Allstate employees to whom Kim-Foraker referred are not proper comparators.

"In determining whether similarly situated nonmembers of a protected class were treated more

favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998). Allstate alleged that Kim-Foraker was terminated for her repeated unprofessional conduct in the workplace; the progressive employment warnings issued to Kim-Foraker cite several instances of Kim-Foraker's confrontational and argumentative behavior. This is distinct conduct from isolated instances of using foul language or falling asleep in front of a judge, behavior in which certain other Allstate employees allegedly engaged.

Second, Kim-Foraker presented no evidence to support her statement that similarly situated employees outside of the protected class behaved unprofessionally, but were not disciplined. Kim-Foraker attached deposition transcripts of Turner-Hawkins and Gilmore to her third supplemental pretrial memorandum, purportedly to show Allstate's selective enforcement of its professionalism policy based on an employee's race, but her discussion of Turner-Hawkins' and Gilmore's depositions misrepresented the record. Kim-Foraker stated, "Ms. Turner-Hawkins testified even through [sic] a black attorney cussed in the hallway the behavior was allowed. Ms. Turner-Hawkins testified the black attorney was not disciplined for cussing in the hallway overheard by a judge." Pl.'s 3d Supp. Pretrial Memo. (paper no. 38) at 2. Turner-Hawkins actually testified precisely the opposite:

> Q.  Is unacceptable behavior for your office to have lawyers cussing in the middle of the hallway, saying motherfucker?
> A.  Yes.
> Q.  If that was done and nothing was sanctioned against the lawyer that said that – and she happens to be black, TS – would that be unacceptable to you?
> A.  I'm not following your question.
> Q.  It is acceptable behavior in your office to cuss in the middle of the hallway?
> A.  No.
> . . .
> Q.  If, in fact, it was proven that she cussed in the hallway and a judge overheard her

| | cussing in the hallway, is that acceptable behavior? |
|---|---|
| A. | No. |
| Q. | Would that behavior be disciplined? |
| A. | Yes. |

*Id.*, Ex.[8] (Dep. of Turner-Hawkins) at 16:10-17:6.

Kim-Foraker also stated that Ms. Gilmore testified she "was unaware of the selective enforcement depending on race at Philadelphia legal. Ms. Gilmore testified she was aware [sic] Plaintiff [sic] the only Asian attorney singled out for bad behavior." Pl.'s 3d Supp. Pretrial Memo. (paper no. 38) at 2. Gilmore actually testified that there was no selective enforcement of Allstate's professionalism policy based on race, and did not state that Kim-Foraker was "singled out" for bad behavior because of her race:

| Q. | Is there selective enforcement at the Philadelphia legal office depending on your race? |
|---|---|
| A. | No. |
| . . . | |
| Q. | Okay. Are you aware that Twanda Turner-Hawkins singled me, the only Asian lawyer in that office, for bad behavior as she saw it? Are you aware of that? |
| A. | I am aware that she said there was an unacceptable performance notification for the behavior you exhibited during an incident with Walter Robinson. |

*Id.*, Ex. (Dep. of Gilmore) at 45:11-13, 46:8-14. There is no evidence that similarly situated employees outside the protected class were treated more favorably; Kim-Foraker cannot show pretext on this basis.

Kim-Foraker also attempted to cast doubt on Allstate's proffered reason by pointing to her supervisor's discriminatory remarks about her race and national origin. However, none of the remarks were uttered when Allstate took disciplinary action against Kim-Foraker or made the decision to terminate her employment. The Court of Appeals recognizes that although

---

[8] Kim-Foraker does not organize her exhibits by letter or number.

17

statements unconnected to the decision-making process are, standing alone, insufficient to show pretext, the statements may serve as circumstantial evidence of pretext when considered in combination with other evidence. *See Roebuck v. Drexel Univ.*, 852 F.2d 715, 733 (3d Cir. 1988).

In *Roebuck*, the plaintiff, a university professor, alleged racial discrimination in the denial of tenure. *Id.* at 725.  Plaintiff relied upon, among other evidence of pretext, derogatory statements about the plaintiff's race uttered by the university president five years before plaintiff was denied tenure. *Id.*  The court found sufficient evidence of pretext to withstand a motion for judgment as a matter of law. *Id.* at 734.  Although the university president's "statements standing alone, occurring as they did over five years before the final denial of tenure, could not suffice to uphold a finding that Drexel [University] discriminated against [plaintiff], they do add support, in combination with the other evidence, to the ultimate conclusion." *Id.* at 733; *see also Ezold*, 983 F.2d at 545 (reversing district court's entry of summary judgment for plaintiff because derogatory statement about plaintiff's gender, uttered by a supervisor five years before adverse employment action against plaintiff, was "too remote and isolated to show independently that unlawful discrimination, rather than [defendant's] asserted reason, more likely caused the firm to deny [plaintiff] the partnership she sought").

In contrast to *Roebuck*, where plaintiff's evidence of pretext consisted of stray remarks plus other evidence of discrimination, Kim-Foraker only submitted her supervisor's stray remarks as evidence of pretext; she did not submit other evidence of racial and national origin discrimination.  The stray remarks uttered by Kim-Foraker's supervisor, standing alone, are insufficient to create a triable issue of fact that Allstate's proffered reason for terminating Kim-

18

Foraker was pretextual. *See Roebuck*, 852 F.2d at 733.

Finally, the factual dispute over whether or not attorney manager Robinson physically injured Kim-Foraker during the March 1, 2006 incident is immaterial; it does not create a triable issue of pretext sufficient to survive summary judgment. It is not disputed that a verbal confrontation between Kim-Foraker and Robinson occurred on March 1, 2006. Allstate conducted a human resources investigation following the March 1, 2006 incident, concluded that Kim-Foraker behaved unprofessionally, and issued a written warning for violation of Allstate policy. *See* Def.'s Mot. for Summ. J., Ex. B (human resources investigation), Ex. D (Unacceptable Behavior Notification). "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Kim-Foraker's statements that Robinson physically injured her on March 1, 2006 create a factual dispute over whether Allstate was mistaken in its assessment of what happened on March 1, but whether or not Allstate was mistaken is immaterial to whether Allstate's proffered legitimate reason was pretextual, that is, not the real reason for the adverse action.

Likewise, the factual dispute over whether Kim-Foraker raised her voice at certain meetings with her supervisors is immaterial. To survive summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act [for the asserted] non-discriminatory reasons." *Id.* The factual dispute whether Kim-

19

Foraker raised her voice might show that Allstate was mistaken in its assessment, but whether or not Allstate was mistaken does not show inconsistencies or contradictions in Allstate's proffered reason for terminating her employment (her unprofessional behavior), so that a factfinder could find the proffered reason pretextual and unworthy of credence. Kim-Foraker presented no evidence creating a genuine dispute of material fact that Allstate's proffered legitimate reason for terminating her employment was a pretext for unlawful discrimination.

Nor did Kim-Foraker present evidence sufficient to satisfy a mixed motive individual disparate treatment claim. In mixed motive cases, an adverse employment action is based on both lawful and unlawful reasons. *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008). Title VII, amended after the Supreme Court first discussed the mixed motive framework in *Price Waterhouse*, provides: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Kim-Foraker stated at the final pretrial conference that she believes there were multiple reasons Allstate fired her, with racial and national origin discrimination one among many reasons. This suggested Kim-Foraker might be attempting to prove her disparate treatment claims under a mixed motive framework. The mixed motive framework is typically used when instructing juries; the Court of Appeals has not stated whether it is also applicable to assessing a plaintiff's claims at summary judgment. *Houser v. Carpenter Tech. Corp.*, 216 Fed. App'x 263, 265 (3d Cir. 2007) (declining to decide whether a mixed motive framework applies at summary judgment because the lack of evidence of unlawful discrimination rendered such decision

unnecessary).

The Court of Appeals stated in *Houser* that, if the mixed motive framework were applicable at summary judgment, a plaintiff would need to point to evidence supporting a conclusion that an impermissible factor played a role in the adverse employment decision. *Id.*; *see also Rouse v. II-VI Inc.*, No. 08-3922, 2009 WL 1337144, at *4 (3d Cir. 2009) (per curiam) (affirming grant of summary judgment for defendant because, under a mixed motive framework, plaintiff failed to present evidence that race played a role in the termination decision). Kim-Foraker failed to present record evidence, direct or circumstantial, showing that her race or national origin were motivating factors in Allstate's decision to terminate her employment. Her supervisor's discriminatory remarks were not uttered when Allstate disciplined Kim-Foraker or terminated her employment, so the stray remarks do not show that race or national origin motivated Allstate's decision. Kim-Foraker cannot prove her individual disparate claims under a direct evidence, pretext, or mixed motive framework; the claims cannot survive summary judgment.

## IV.   Conclusion

For the reasons explained above, Allstate's motion for summary judgment will be granted. An appropriate order follows.